3-0-8-0-7-6-3. The Court of the State of Illinois, Appellee Jennifer Camden v. Jimmy Thompson, Appellant Yasmin Eakin. Counsel, you may proceed. Good morning, Your Honors. May it please the Court, my name is Yasmin Eakin and I represent the Appellant Jimmy Thompson. Our brief raises three issues and we believe they all merit your attention. But for purposes of this argument, my main concern is the issues about Mr. Thompson's unknowing waiver of his right to testify and the denial of his right to counsel at sentencing. Because I want to emphasize that those issues involve the unique and specific facts of this case. The remaining issue is a speedy trial issue that's fairly straightforward. It involves one contested date. And so we'll rest on the argument in the brief for that issue. But of course, I'd be happy to answer any questions Your Honors may have. So with that, I will start with the issue of Mr. Thompson's unknowing waiver of his right to testify. Although the state argues in its brief that we are urging you to adopt a rule that the triartic court would be required to admonish a pro se defendant in every case of his right to testify on the record. That is not what we are asking and that is not the issue. The issue here is whether under the totality of the circumstances in this particular case, the record shows that Mr. Thompson knowingly and understandingly waived his fundamental right to testify. Because in this case, the judge did advise Mr. Thompson of his right to testify or his right to decline to testify. Mr. Thompson represented himself at trial. And right before opening statements, the trial court explained to him how the trial would proceed. That the parties would have the opportunity to present opening statements. The state would call witnesses and Mr. Thompson could cross examine the state's witnesses.  He said he had a right to testify, an absolute right not to testify. And if he didn't testify, the court could instruct the jury that his failure to testify should not be considered. If Mr. Thompson testified, the judge told him that he would be under oath and subject to cross examination by the state's attorney like any other witness. The court asked Mr. Thompson at that point if he had any questions on the order of proceeding or anything. And Mr. Thompson indicated that he did understand the order of proceedings. But he was silent about whether he understood the court's explanation about the right to testify or not testify. And now the issue of his waiver of his right to testify arose after the state rested its case. And the judge asked him if he had decided whether he was going to testify or not. Now it was at this critical point where Mr. Thompson had to make that decision that he showed confusion about exercising that right. He said it wouldn't make sense for him to testify because the prosecutor would be the only one who could ask him questions. And in response, the court simply stated, well, that's your constitutional right whether to testify or not. So when confronted with the decision about whether to testify or not, he showed a lack of understanding on how to exercise that right as a pro se defendant. At that point, the trial court had a duty to clarify Mr. Thompson's confusion to ensure that he had the necessary information to make an intelligent and knowing decision about whether to waive that right. Now this isn't a heavy burden, wouldn't have been a heavy burden on the trial court. He just would have to explain that Mr. Thompson could get on the stand, he would be under oath, he would tell his story, he didn't have to have someone questioning him. And after he was done, the prosecution would get the opportunity then to cross-examine him. This was a minimal explanation, it would not have taken any substantial time or effort, and it would have ensured that Mr. Thompson understood how to exercise his right to testify if he wanted to. And in closing argument, it became abundantly clear that Mr. Thompson had wanted to testify. He repeatedly tried to present facts which had not been presented as evidence. Throughout the argument, he complained that he was unable to tell his side of the story. At one point, he told the jury, it's kind of hard to really defend yourself when you can't tell your story or anything. At another point, he said he couldn't tell his story like it happened. And at another point, he said he wasn't allowed to state anything. He's got a story and he can't tell it like he wants to. The closing argument showed that Mr. Thompson wanted to testify and he had not understandingly waived that right. Now, the error of his unknowing waiver snowballed when during closing arguments, the trial court and the state's attorneys specifically remarked on his failure to testify. Based with Thompson's repeated attempts to tell his side of the story during closing argument, the judge finally informed the jury that Mr. Thompson had chosen to exercise his constitutional right not to testify. What kind of script do you think a trial judge is supposed to say to a person who's pro se about the right to testify? I don't think there is a script that has. I don't think there's a requirement that the trial judge has to give any admonishment. In fact, the judge does not have. In Illinois, there's no law that says the judge does. But in this case, he did. And in this case, when he did, and when Mr. Thompson was faced with that crucial decision of whether to testify or not, he expressed confusion about how to exercise that right. Even if an attorney was standing right next to Mr. Thompson, and he expressed confusion about his waiver of his fundamental constitutional right, there's an obligation to ensure that he knowingly and understandingly waives that right. So in this particular case, we're not saying that the judge is required to do so, even in a case with a pro se defendant. But in this particular case, where you have a defendant who showed confusion about exercising that right, who then, in closing argument, clearly showed that he intended to testify and wanted to testify, in this particular case, the judge had a duty to clarify his confusion on how to exercise that right. After the judge informed the jury that Mr. Thompson had chosen not to exercise his constitutional right to testify, and in case the jurors weren't clear of the significance of Mr. Thompson, what the significance of Mr. Thompson's failure to testify was, the prosecutor brought it home for them. Because he told the jurors that although they were not to consider that Mr. Thompson didn't testify, that it wasn't true that Mr. Thompson couldn't tell his story. He just chose not to do so. So the combined remarks of the judge and the prosecutor improperly directed the jury to Mr. Thompson's failure to avail himself of the right to testify, when in fact, his closing argument clearly showed that he did not understandably give up that right. So as a result of their remarks, Mr. Thompson was penalized for his unknowing and unintelligent waiver of his right to testify. Because the jury could have inappropriately considered that Mr. Thompson didn't tell his story as evidence against him. Now the fundamental fairness of this trial was clearly called into question by Thompson's unknowing waiver of his substantial right to testify and the comments by the court and the prosecutor about that right. But the integrity and the fairness of this trial was further compromised when the prosecutor disparaged Mr. Thompson as a fool for representing himself at trial. And the prosecutor's remarks were in reference to Thompson's attempt to testify during his closing argument. And at the same time that he disparaged Thompson as a fool, he bolstered his own credibility when he said he, on the other hand, was a state's attorney and he did this for a living. He presented evidence in criminal cases and he was proud of what he did. The state's remark was improper because it implied that there was greater authenticity in what he said as a state's attorney than what Thomas said as a foolish pro se defendant. So under these specific circumstances in this case, where the record fails to establish that Mr. Thompson understandingly waived his fundamental right to testify, where his closing argument showed he wanted to testify, and where the improper comments of the judge and prosecutor in closing argument compounded the prejudice of his unintelligent waiver, Mr. Thompson was denied his substantial right to a fair trial. And therefore, we ask the court to reverse this conviction or remand for a new trial on that issue. If there's no further questions, then I would move on to the issue of the denial of counsel at sentencing. Your Honors, in People v. Baker, the Supreme Court has held that a defendant's waiver of the right to counsel carries through to all subsequent proceedings unless the defendant later requests counsel or other circumstances suggest that the waiver is limited to a particular stage of the proceedings. And if the defendant does later request counsel, every reasonable presumption should be made in favor of a revocation of an earlier waiver due to the importance of the fundamental right to counsel. In this case, Mr. Thompson requested counsel prior to his hearing on his pro se post-trial motions and sentencing. First, after trial, Mr. Thompson filed a pro se motion for new trial and listed what he entitled appeal and errors that occurred during his trial. In his motion, he alleged there was no way he could defend himself because he was incompetent, mentally unstable, drug addicted, and an alcoholic. Now, attached to this motion, he also requested trial transcripts. And in that request, he explained that he was convicted on January 30th, so he believed he needed to have his appeal in within the next 30 days. And he also attached a pro se notice of appeal to these motions. At the hearing before the court, the sentencing hearing, the court asked Mr. Thompson if he was ready for the court to review and rule on his motion for a new trial. Now, Thompson didn't say he was ready. He responded that he believed he would be given an attorney on appeal. And the trial court did not ask if Mr. Thompson wanted counsel at this point. Instead, the court interpreted Mr. Thompson's response literally and explained to him that an appeal was premature and the court would have to rule on the post-trial motions first. Mr. Thompson still did not accept this explanation. He continued to express a desire to now be represented by counsel. He told the court, well, I guess I've got to represent myself because you said I can't have an attorney, and I'm foolish not to have an attorney, so I have no choice, but, yes, I am ready at this time. And then the court denied the motions for a new trial and sentenced Mr. Thompson to 30 years in prison. When Mr. Thompson asked for counsel, the trial court should have determined whether he wished to revoke his earlier waiver of counsel, and the court's failure to do so effectively denied him his right to counsel. Mr. Thompson asked for an attorney on appeal, but it was clear from the documents that he filed that he believed that the appeal and the post-trial proceedings were one and the same. And when Mr. Thompson insisted that it was foolish for him to proceed without an attorney, it was apparent that Thompson had changed his mind about the wisdom of proceeding without counsel, and the court should have construed that as a request to revoke his earlier waiver of counsel, and the court abused its discretion in doing so. Because of the trial court's error, Mr. Thompson was effectively denied counsel in a sentencing hearing, and although the denial of the right to counsel does not require showing a prejudice, here actually the record indicates that he was prejudiced by not having counsel at sentence. Because at the hearing, he told the court that the pre-sentence investigation report did not include accurate facts about his drug addiction or his mental health records, which showed that he had been institutionalized for mental illness. An attorney could have helped obtain this evidence and ensure that it was included and considered by the court. And in fact, even after the sentencing, Mr. Thompson, after he was sentenced to 30 years in prison, Mr. Thompson pleaded with the court, could you please at least ask that I get some type of help? I've never been treated for this drug addiction. Could you put something in there about my mental illness? I haven't been properly treated. So because the trial court abused its discretion when it failed to determine whether Mr. Thompson wished to revoke his earlier waiver of counsel, and because as a result Mr. Thompson was denied his right to counsel at sentence, in addition to asking for a new trial on the previous issue, we ask that this court vacate Mr. Thompson's sentence and remand for a sentencing hearing due to his denial of his right to counsel. Thank you, Your Honor. Thank you, Counselor. Counselor, you may proceed. Thank you, and may it please the Court, Counsel. With respect to issue 2A of the brief, the defendant's alleged inappropriate or unknowing waiver of his right to testify. First, I'd note that this issue is reviewable only on plain error review. I'd also note that in 45 states and in the federal courts, there's no duty on the part of the judge to tell a pro se defendant about his right to testify. And so if there's no duty to do that, then how can there be a duty to inform a pro se defendant of how he might exercise that right to testify, for example, in a narrative? Well, clearly, I mean, if he's going to take that step, he's got to do it correctly, right? I'd say it wasn't done here, but I mean, you can't say something that's wrong. It's improper. The judge didn't give any inappropriate or the judge didn't give any inaccurate. I'm just saying, if you make that step at all, you've got to do it correctly. Isn't that what your opponent is saying? Or maybe I misunderstood, Your Honor. I believe that the defendant's position isn't that the judge gave inaccurate advice, but rather that a defendant understood it inaccurately. I believe that's the defendant's position. But in this case, the defendant gave an ambiguous statement, arguably ambiguous, and then it was followed by unambiguous statements that he did waive his right to testify. And perhaps to answer your question, Your Honor, I'd point out that in People v. Davis, a case cited in the briefs, it stated that where a defendant is represented by counsel, it's counsel who has the duty to clear up any ambiguity on the issue of whether a waiver of testifying is knowing and voluntary. But here, of course, the defendant was pro se, and the defendant here isn't arguing that he unknowingly waived his right to counsel. It was the defendant himself who had the obligation of understanding his rights. I'd also point out that Davis says that this issue can also be reviewed for harmless error, and that in Davis, error was found and it was deemed harmless where the defendant hadn't provided an offer of proof indicating what his testimony would be if he'd given it, and also where there were multiple eyewitnesses to the crime. And in this case, both of those circumstances exist. Moreover, had defendant testified, his prior convictions would have come in, including, I believe, three robbery convictions. Moreover, even under the minority view pressed by the defendant, for example, in Maryland, the judge doesn't have a responsibility to step in and be an advocate for the defendant. In fact, a Maryland case cited by the defendant can be read as warning a judge away from providing extra advice to a defendant. I'm reminded of nothing so much as a first year tort lesson on the theory of rescue, where one doesn't have an obligation to, for example, swim out to rescue a drowning man, but if one undertakes that, then one can't abandon him halfway and leave him to drown in the shallows. And I think that's the thrust of defendant's argument here. And I'd point out that no court, no case cited by the defendant has gone that far, has gone as far as the defendant here urges this court to go. With respect to the issue of the alleged failure to appoint counsel sentencing, I'd point out that this issue, too, is reviewable for plain error, and that the fundamental nature of the right to counsel doesn't change that analysis under McCarter, a case cited in the briefs. And I'd argue that the judge can't be said to have abused his discretion, and that's the standard to determine whether there was any error at all, where the defendant gave, again, another arguably ambiguous statement and followed it up with unambiguous statements that, yes, he was ready to proceed. Furthermore, the written requests and the oral requests for appellate counsel was just that. These were requests for counsel on appeal or for appellate counsel. And I'd point out that the record does show that the defendant did understand the difference between the post-trial motion, which he had already filed, and the appeal, which he told the court that he intended to file and that he would like the transcript so that he could file it, but he hadn't filed it yet. And that's the stage that he wanted counsel to help him with. And under the continuing waiver doctrine, the waiver of counsel is presumed to continue until the defendant clearly and convincingly says otherwise. And here, I don't think there's any question that the defendant clearly and convincingly stated that he wanted an attorney on appeal. But it also is true that the defendant clearly stated his readiness to proceed at the post-trial motion hearing. I'd also point out that the trial court did correct at defendant's request the pre-sentence investigation report, which counsel mentioned here today. With respect to certain statements that were made by the judge and the prosecutor regarding defendant's waiver of his right to testify, again, I'd note that this, too, is reviewable for plain error, and I'd also note that the Illinois Supreme Court in the case People v. Herent has stated that these types of statements are not the types of statements that can constitute plain error under the second prong of the Herent test. I'd also point out that under defendant's argument, this argument that these particular statements were improper is conceded if the defendant's waiver of his right to testify is deemed to have been appropriate. I believe that's a concession that the defendant has made here. In other words, Issue 2A or, excuse me, Issue 2B hinges upon the disposition of Issue 2A. I'd also point out that these statements need to be read in context, that by my count, at least 19 times the judge stopped the defendant during his closing argument and told him to confine his statements to the evidence and told the jury that arguments are not evidence. And on three occasions, he said further statements that are the focus of defendant's argument here, and I'd point out that two of those statements were given in response to defendant's questions about his ruling. In other words, what happened was the judge made a ruling that defendant was giving an appropriate argument. The defendant asked the judge, what is the reason for this ruling? And then the judge gave an answer. And in two of those instances, it's those answers that are the focus of defendant's argument here, and I'd argue that defendant can hardly quibble with statements that he himself asked the court to make. And I'd also note that two of these three statements by the judge, a different two, were also accompanied contemporaneously with jury instructions to the jury that they're not to consider the fact that the defendant did not testify. These instructions, in addition to, of course, the blanket jury instruction given with the other instructions. I'd also note that these statements are only, in addition to being reviewed for plain error, they're not error at all unless the remarks are deemed to have caused the verdict. And also that the statement by the prosecutor was, and I believe the defendant concedes this, admittedly proper under the United States Supreme Court case United States v. Robinson if issue 2A is decided in favor of the people. With respect to a couple of miscellaneous remarks in rebuttal that the prosecutor made, first, the prosecutor quoted Clarence Darrow's old chestnut about the pro se defendant having a fool for a client, and second, his statement that defendant was right, I do do this for a living. Again, first, those are reviewable for plain error and not error at all unless they are deemed to have caused the jury's verdict. Second, both were clearly responsive to the defendant's argument. And moreover, the first argument about the pro se defendant having a fool for a client was clearly meant, I think, by the prosecutor when the statement is read in context, as it must be by this court, to counteract the effect of any undue sympathy that the jury might have felt for the defendant who went pro se. The prosecutor reminded the jury of their question on Gordier that they would not give any undue sympathy to the defendant because he went pro se. And the prosecutor, in making that remark, was reminding the jury of that promise that they made. Second, the statement that the defendant was right, I do do this for a living, was intended to respond to the defendant's argument that the prosecutor was being malicious or on a personal vendetta or was proceeding inappropriately. And furthermore, there were a couple of citations that perhaps were unclear in the people's answer brief, and I'd like to point those out. The people stated in the answer brief that the defendant, during his closing argument, made several admissions and comments which were, one could say, foolish, including that he'd stolen drugs from the victim. The citation ought to have been to record page 503. This was a record citation in the preceding sentence that that sentence appeared in, and also record citation 524, record page 524 there. Just a couple of other points on issues that the defendant did not raise here. I'd like to raise the question of People v. Jocko. This was a case cited for the first time in defendant's reply brief in Issue 3B. This is the argument under People v. Moore. I point out that Jocko, in a case of first impression, extended Moore to questions of pretrial allegations of ineffective assistance of counsel where a defendant is represented by counsel, and I'd point out first that this argument wasn't made in the opening brief and is forfeited under Rule 341. Second, Jocko is a case from 2009, and defendant doesn't explain how it could be retroactive since it is an issue of first impression to trial court proceedings from back in 2003. And third, neither Moore nor Jocko apply in this case for reasons that the people explain in their answer brief, and the explanation of why Moore doesn't apply in the answer brief, I'd extend that to an explanation that also explains why Jocko does not apply. Counsel has two minutes. Thank you. Furthermore, with respect to Issue 1, just a couple of points answering the reply. Attorney Pickle, this is the speedy trial issue, Attorney Pickle, the first public defender of the defendant, did have the authority to request that October 7th continuance. Pickle is an assistant public defender, and he appeared in court on October 7th with the chief public defender, a Mr. Penn, and Pickle asked in one sentence to withdraw because of a conflict of interest and also for unnecessary continuance. The trial court had not ruled on Pickle's motion to withdraw when Pickle, in the same breath, asked for a continuance. So at that moment, Pickle still did represent the defendant. Further, when the court said that he – when the judge said that he would set the case over for reassignment to a new public – assistant public defender and move the trial dates to December 16th, Chief Public Defender Penn acquiesced by his silent presence there, and so this acquiescence is not responded to in the reply brief, and the people would note that. Also, that the – that on December 6th, Attorney Cusack, the assistant public defender who was brought in, retracted any objection to the October 7th continuance that the defendant may have made when he said, well, defendant knows that he has a speedy trial, right, and continues to want that, but I think he understands now, Cusack said, that he – that we need more time. And so if the October 10th and October 30th letters could be deemed to quibble with the fact of the representation rather than, as is the State's position, simply quibbling with the trial strategy of requesting the October 7th continuance, then – You have finished your thought. Thank you. Then in any event, Cusack's words of December 6th would retract that. And if there are no further questions, I respectfully request that the court – That was after the speedy trial period had passed, was it not? That was after the speedy trial period had passed. Yes, the December 6th hearing was after the speedy trial had passed, Your Honor. The speedy trial date was November 4th. I point this out only for the point that I made, that if this Court were to read the October 10th and October 30th letters as somehow doing more than complaining about counsel's trial strategy instead of, as is required to repudiate the act of Pickle and Penn to quibble with the very fact of representation itself, that if the Court reads those letters in that way, then the subsequent statement of Attorney Cusack on December 6th would counteract that. That's my point. Thank you, counsel. Counsel, you may proceed. First, I would like to address this idea that the court had no duty to inform Mr. Thompson of his right to testify. And, again, that's correct. The state of the law is such that right now in Illinois there's no duty to inform Mr. Thompson of his right to testify. But here the court did do so. And then Mr. Thompson showed confusion about how to exercise that right. And a strict standard of waiver is applied to fundamental rights, like fundamental rights to testify. So the court is supposed to indulge in every reasonable presumption against waiver. And you can't presume acquiescence in the loss of a fundamental right. So here the record shows that he was confused on what he knew he had knowledge of the right, but he had a fundamental misunderstanding of what that right entailed. And it was at that point, it was because of the strict standard of waiver that applies, it was incumbent upon the trial court to ensure that he had the information to make an intelligent decision on whether or not to waive that right to testify. And, in fact, counsel cites Davis, and that brings me to the point of the issue here is what's been litigated in other cases. This is not a novel issue. The issue is did the defendant knowingly waive his right to testify, not whether the court had an obligation to admonish a pro se defendant about that right. It's did this defendant under these circumstances show that he knowingly and intelligently waived his right to testify. And the closing argument shows that he did not do so because he wanted to testify. And that is another distinction. If you look at the Davis case, the court there even says that one of the reasons they found against the defendant is there was nothing in the record that showed that the defendant ever wanted to testify. But they do remark that had there been evidence that the defendant wanted to testify and was denied that right, that would be a serious error. That's in Davis. In regards to the sentencing issue, counsel indicates that Mr. Thompson told the court that he was ready to proceed. He only told the court he was ready to proceed after saying to the court, telling the court, well, I'd like counsel, but you won't give me counsel. So, yeah, I guess I'm ready. At that point, I don't know how much more he could have done to try to get counsel to be appointed. So he was forced to proceed. Yes, he was ready to proceed at that point. And this idea that he knew that the appeal was distinct from the post-trial proceedings, it's just not supported by the record. He filed his request for the transcripts. He filed his premature notice of appeal at the exact same time that he filed the post-trial motions. He entitled the allegations in the post-trial motions appeal and error. He put in his motion, I'm incompetent. I can't represent myself. I mean, I don't know how much more he is required for him to say. Maybe it's not the most articulate way of saying it, but virtually jumping up and down and saying, I can't represent myself, and then asking for counsel. And finally, I'll just say with the speedy trial issue, as to the letters by Mr. Thompson on October 10th, the October 10th letter where he complained that previously on September 27th, he had asked Mr. Pickle to assert his right to speedy trial, and that Mr. Pickle went into court and basically didn't do so and just withdrew from the case. That was not the only time Mr. Thompson complained about the denial of his speedy trial right. On October 30th, he referred back to a hearing where he was finally assigned Mr. Cusack on October 10th, where he said in his letter, I tried to speak up and tell you that I wanted my speedy trial right, but you told me to talk to my attorney. And lo and behold, on October 10th, you see in the transcript when he is assigned Mr. Cusack as an attorney, Mr. Thompson does try to speak up. He says, hey, your honor, and the court says, you need to talk to your new attorney. And he continued to object to foregoing his speedy trial right throughout his trial. In his motion to represent himself, one of the reasons he said he wanted to proceed, per se, was because he felt that his attorneys had disregarded his speedy trial rights. When he waived his right to counsel, he repeated that he had denied his right to a speedy trial. And at the end of that hearing, he said he wanted to exercise his speedy trial rights, and the court just replied, well, we're set for Monday. And the trial court proceeded without addressing his claims. So for these reasons, I don't think you can look at his letters to the court, his repeated entreaties to the court that he wanted to exercise his speedy trial rights. I don't think that that can be viewed as acquiescence to his attorneys requesting a date outside of the speedy trial term. Counsel has one minute. If there are no further questions. Thank you, Counsel. I want to thank the lawyers, and we'll take this case under advisement. We're going to recess for a panel change, and you'll receive a.